UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA
BROWARD DIVISION

BARRY BORTZ                                        CASE NO. _____

      Plaintiff,
v.

INTERNATIONAL AUTO GROUP OF
SOUTH FLORIDA, INC. a/k/a INTERNATIONAL
AUTO GROUP a/k/a IAG,

      Defendant.
_____/

## COMPLAINT

Plaintiff, BARRY BORTZ, sues Defendant, INTERNATIONAL AUTO GROUP OF SOUTH FLORIDA, INC. a/k/a INTERNATIONAL AUTO GROUP a/k/a IAG, and in support states:

## PARTIES

1. Plaintiff is an individual who resides in Cincinnati, Ohio.

2. Defendant is a Florida corporation with its principal place of business in Pompano Beach, Florida.

## JURISDICTION AND VENUE

3. This Court has subject matter jurisdiction over this action because this is an action between diverse parties, and the matter in controversy exceeds the sum of $75,000, exclusive of interest, costs, and attorneys' fees.

4. This Court has personal jurisdiction over Defendant because the Defendant's wrongful conduct took place in the Southern District of Florida.

5. Venue is proper in this District because the events and actions that give rise to this action occurred in the Southern District of Florida.

## FACTS COMMON TO ALL COUNTS

6. In or about May 2014, Plaintiff viewed a page on Defendant's website (www.iagclassicsl.com) describing and showing pictures of an automobile – a green 1960 Mercedes 190SL Roadster (the "Automobile") – which was listed for sale..

7. Defendant's website listing described the Automobile as having the following qualities:

   a. a brand new dark green canvas top;

   b. all original body panels, including matching body number stamps on the trunk and hood;

   c. all the chrome replated or replaced, including the windshield frame;

   d. all rubbers and weatherstripping replated or replaced, including the windshield gasket;

   e. a completely restored Becker stereo, which has had iPod integration included with all new hardware;

   f. all new berry red leather with correct stitching and patterns;

   g. a "concours quality" engine bay detail including all fresh anodized parts, fully rebuilt brake booster, fully rebuilt Solex carburetors, which have been refinished to correct original aluminum, all new hoses and factory correct hose clamps, new heather boxes, new correct fuel pump with manual prime, new fuel filter housing, new fuel lines, and much more than can be listed;

   h. the original radiator cleaned, boiled and refinished;

2

      i. the original gas tank removed, boiled, and sealed;

      j. all gauges removed and sent off for restoration, including new chrome bezels and restoration of the faces/needles;

      k. original hand wind Kienzle clock restored with new face and bezel; and

      l. the undercarriage including gas tank and suspensions, as well as fenderwells, refinished to factory specification with correct colors.

8. Defendant's website also represented that:

      a. the Automobile was "fully and completely restored to concours quality[1]";

      b. "This is truly one of the most outstanding examples we have ever produced, in color combination that elicits oohs and ahhs where ever we take the car;" and

      c. "Don't miss out on one of the most meticulously restored 190SL's you will ever find.  The colors are both rare and desirable, the car runs and drives as nice as it looks, and these roadsters have shown an amazing appreciation in value and collectability."

9. In addition, the listing for the Automobile on Defendant's website included numerous photographs of the Automobile, including:

      a. a photograph of the odometer, which represents that the car has 79,087 miles;

      b. photographs of the engine with the engine stamp number 1210940408; and

      c. photographs of the interior and exterior of the vehicle.

10. In or about May 2014, Plaintiff spoke with Stuart Seigle, an agent of the Defendant, regarding the Automobile.  Mr. Seigle represented to Plaintiff that the Automobile was of "concours quality."

---

[1] Concours quality is used to describe the highest quality of restoration and that the vehicle has been restored accurately, or as close to the way the original creator intended as possible.

11. Based on the foregoing representations and the detailed description and pictures of the Automobile on Defendant's website, Plaintiff placed an order on June 9, 2014 to purchase the Automobile for $200,000 (the "Purchase Order"). The Purchase Order is attached hereto as **Exhibit A**.

12. The Purchase Order described the Automobile as a green 1960 Mercedes 190SL, with the ID Number 121042-10-014430.

13. Concurrent with the signing of the Purchase Order, Plaintiff wired to Defendant the initial partial payment of $50,000.

14. Also on June 9, 2014, the parties executed an Addendum to the additional terms and conditions of the Purchase Order, a copy of which is attached hereto as **Exhibit B**.

15. After Defendant received Plaintiff's initial partial payment, Defendant informed Plaintiff that it needed additional time to deliver the Automobile due to flaws in the paint that needed to be corrected.

16. Due to this delay, the parties executed a Second Addendum to the additional terms and conditions of the Purchase Order on August 19, 2014, providing, among other things, that the remainder ($150,000) of the purchase price would be due upon completion of the repainting of the exterior of the Automobile. A copy of the Second Addendum is attached hereto as **Exhibit C**.

17. On September 15, 2014, Plaintiff wired the remaining $150,000 to Defendant for the purchase of the Automobile.

18. After the final payment was made, Defendant informed Plaintiff that a second purchase order needed to be signed (the "Second Purchase Order"), a copy of which is attached hereto as **Exhibit D**. Unbeknownst to Plaintiff at that time, the ID Number for the Automobile

4

on the Second Purchase Order was listed as 1210401001959, a different ID Number than the ID Number listed on the Purchase Order, and a different number than the number stamped on the Automobile as depicted on Defendant's website.  *See* Exhibit D.

19. On September 23, 2014, Plaintiff's assistant, Rob Geers, visited Defendant's facility to inspect the Automobile before taking delivery of it.  The automobile presented to Mr. Geers (the "Non-Conforming Automobile"), however, was not the Automobile that was referenced on the Purchase Order, that was depicted on IAG's website, that Defendant described to Plaintiff, or that Plaintiff had sought to purchase from Defendant.

20. The Non-Conforming Automobile differed from the Automobile in the following ways:

    a. the mileage on the odometer of the Non-Conforming Automobile was 3,063, which was different than the mileage of the Automobile as depicted on Defendant's website;

    b. the ID Number or Vehicle Identification Number (VIN) stamped on the Non-Conforming Automobile is 1210401001959, which did not match either the ID Number listed on the Purchase Order for the Automobile or the number stamped on the engine of the Automobile depicted on Defendant's website; and

    c. the number stamped on the engine of the Non-Conforming Automobile was 12192110015941, which did not match either the ID number listed on the Purchase Order for the Automobile or the number stamped on the engine of the Automobile depicted on Defendant's website.

21.     In addition, the Non-Conforming Automobile was not "concours quality" as represented by Defendant. Instead, the Non-Conforming Automobile has several defects, including without limitation:

   a. poor body work;

   b. delaminated windshield;

   c. ill-fitting trim on body of the vehicle;

   d. rusty and pitted trim on convertible top;

   e. chip in door jam;

   f. rusty and peeling chrome on seat frame;

   g. loose and rusty bolts under dash;

   h. improper installation of sheet metal on undercarriage;

   i. improper finish of wheel wells;

   j. rusty shields on the wheel wells;

   k. rusty screw on convertible top on the passenger side of the vehicle;

   l. improper quarter panel installation; and

   m. poor paint work.

22.     Because the Non-Conforming Automobile was not the Automobile that Plaintiff agreed to purchase from Defendant, Plaintiff's counsel, on September 23, 2014, sent a letter to Defendant explaining that Plaintiff would not accept delivery of the Non-Conforming Automobile and demanding repayment of the $200,000 that Plaintiff had paid to Defendant for the purchase of the Automobile.

23.     In addition, on September 30, 2014, pursuant to Section 772.11, Florida Statutes, Plaintiff's counsel sent a civil theft demand letter to Defendant requesting repayment of the

$200,000 for depriving Plaintiff of his right to and use of the $200,000 he had paid to Defendant for the purchase of the Automobile. A copy of that letter is attached hereto as **Exhibit E**.

24. In a written response through counsel, Defendant declined to comply with Plaintiff's demands for the return of the $200,000. As of the date of this Complaint, Defendant has failed to return the $200,000 to Plaintiff.

25. All conditions precedent to bringing this action, if any, have been performed or waived or have occurred.

## COUNT I
## FRAUDULENT INDUCEMENT

26. Plaintiff repeats, re-alleges, and incorporates by reference the allegations set forth in paragraphs 1 through 25 above as if fully set forth herein.

27. As set forth above, Defendant made false representations of material fact to Plaintiff regarding the condition and restoration of the Automobile.

28. The false representations included: (1) statements to Plaintiff by Mr. Seigle that the Automobile was of "concours quality;" (2) statements on Defendant's website describing the Automobile as being "meticulously restored," and being "fully and completely restored to concours quality;" (3) pictures on Defendant's website of the odometer of the Automobile, showing that the car has 79,087 miles; (4) pictures on Defendant's website of the engine of the Automobile with the engine stamp number 1210940408; (5) pictures on Defendant's website of the interior and exterior of the vehicle showing the Automobile in pristine condition; and (5) listing the ID Number on the Purchase Order as 121042-10-014430.

29. The foregoing misrepresentations were made by Defendant with knowledge of the representations' falsity.

30. Defendant made these false representations in order to induce Plaintiff to make a purchase and transfer to Defendant $200,000.

31. Plaintiff acted upon Defendant's misrepresentations by transferring to Defendant $200,000 to purchase the Automobile. Plaintiff would not have done so, but for Defendant's false representations.

32. Plaintiff acted with justifiable reliance on Defendant's representations.

33. As a direct and proximate result of Defendant's misrepresentations, Plaintiff has sustained damages.

34. Plaintiff seeks an award of exemplary and punitive damages based on, as set forth above, Defendant's willful, wanton, and intentional misconduct in misrepresenting the quality of the Automobile as "concourse quality," the ID Number of the Automobile, the mileage of the Automobile, the number stamped on the engine of the Automobile, and various other details regarding the interior and exterior of the Automobile, with the intent to induce Plaintiff to pay $200,000 for the Automobile, and never intending to deliver to Plaintiff the Automobile that Plaintiff sought to purchase.

WHEREFORE, Plaintiff demands the entry of a judgment against Defendant for compensatory damages and/or restitution, exemplary and punitive damages, interest, costs, and for such other relief as this Court deems appropriate and just.

## COUNT II
### NEGLIGENT MISREPRESENTATION

35. Plaintiff repeats, re-alleges, and incorporates by reference the allegations set forth in paragraphs 1 through 25 above as if fully set forth herein.

36. Defendant, as seller, owed a duty of care to the Plaintiff, as buyer, to use reasonable care in making representations regarding the condition and restoration of the Automobile.

37. As set forth above, Defendant violated its duty of care by making false representations of material fact to Plaintiff regarding the condition and restoration of the Automobile.

38. The false representations included: (1) statements to Plaintiff by Mr. Seigle that the Automobile was of "concours quality;" (2) statements on Defendant's website describing the Automobile as being "meticulously restored," and being "fully and completely restored to concours quality;" (3) pictures on Defendant's website of the odometer of the Automobile, showing that the car has 79,087 miles; (4) pictures on Defendant's website of the engine of the Automobile with the engine stamp number 1210940408; (5) pictures on Defendant's website of the interior and exterior of the vehicle showing the Automobile in pristine condition; and (5) listing the ID Number on the Purchase Order as 121042-10-014430.

39. Defendant knew or should have known that the foregoing representations that it made to Plaintiff were false.

40. Defendant made these false representations in order to induce Plaintiff to make a purchase and transfer to Defendant $200,000.

41. Plaintiff acted upon Defendant's misrepresentations by transferring to Defendant $200,000 to purchase the Automobile. Plaintiff would not have done so, but for Defendant's false representations.

42. Plaintiff acted with justifiable reliance on Defendant's representations.

43. As a direct and proximate result of Defendant's misrepresentations, Plaintiff has sustained damages.

44. Plaintiff seeks an award of exemplary and punitive damages based on, as set forth above, Defendant's willful, wanton, and intentional misconduct in misrepresenting the quality of the Automobile as "concourse quality," the ID Number of the Automobile, the mileage of the Automobile, the number stamped on the engine of the Automobile, and various other details regarding the interior and exterior of the Automobile, with the intent to induce Plaintiff to pay $200,000 for the Automobile, and never intending to deliver to Plaintiff the Automobile that Plaintiff sought to purchase.

WHEREFORE, Plaintiff demands the entry of a judgment against Defendant for compensatory damages and/or restitution, exemplary and punitive damages, interest, costs, and for such other relief as this Court deems appropriate and just.

## COUNT III
## BREACH OF CONTRACT

45. Plaintiff repeats, re-alleges, and incorporates by reference the allegations set forth in paragraphs 1 through 25 above as if fully set forth herein.

46. As more particularly described above, on June 9, 2014, Plaintiff placed an order to purchase the Automobile. *See* **Exhibit A**.

47. Pursuant to the Purchase Order, Plaintiff agreed to purchase a green 1960 Mercedes 190SL with the ID Number 121042-10-014430 for the purchase price of $200,000.

48. Defendant breached the Purchase Order by attempting to deliver to Plaintiff the Non-Conforming Automobile which: (1) had 3,063 miles on the odometer that was different than the mileage of the Automobile as depicted on Defendant's website, which Plaintiff had agreed to purchase; (2) had the ID number 1210401001959, which did not match either the ID Number

listed on the Purchase Order for the Automobile or the number stamped on the engine of the Automobile depicted on Defendant's website; (3) had stamped on the engine the number 12192110015941, which did not match either the ID number listed on the Purchase Order for the Automobile or the number stamped on the engine of the Automobile depicted on the Defendant's website; and (4) was not "concours quality."

49. As a direct and proximate result of Defendant's breach of the Purchase Order, Plaintiff has sustained damages.

WHEREFORE, Plaintiff demands the entry of a judgment against Defendant for compensatory damages and/or restitution, interest, costs, attorneys' fees (*see* Exhibit A at p. 2, ¶ 2), and for such other relief as this Court deems appropriate and just.

## COUNT IV
## UNJUST ENRICHMENT

50. Plaintiff repeats, re-alleges and incorporates by reference the allegations set forth in paragraphs 1 through 25 of this Complaint as if fully set forth herein.

51. Plaintiff conferred a benefit on Defendant when he transferred the purchase price of $200,000 to Defendant.

52. Defendant had knowledge of the benefit it received from Plaintiff, and voluntarily accepted and retained the benefit conferred on it.

53. It is inherently unfair and inequitable that Defendant has retained the benefit conferred at the expense of Plaintiff, who was defrauded by Defendant.

54. As a direct and proximate result of Defendant retaining the benefit conferred on it by Plaintiff, Defendant has been deprived of the $200,000 that he transferred to Defendant, and equity requires that Defendant pay to Plaintiff the value of the benefit conferred upon it.

WHEREFORE, Plaintiff demands the entry of a judgment against Defendant for

compensatory damages and/or restitution, interest, costs, and for such other relief as this Court deems appropriate and just.

## COUNT V
## CIVIL THEFT

55. Plaintiff repeats, re-alleges and incorporates by reference the allegations set forth in paragraphs 1 through 25 of this Complaint as if fully set forth herein.

56. Plaintiff transferred $200,000 to Defendant for the purchase of the Automobile.

57. Defendants took the $200,000 and failed to deliver the Automobile.

58. Defendant never intended to deliver to Plaintiff the Automobile. Instead, Defendant knowingly obtained Plaintiff's $200,000 with the felonious intent to either temporarily or permanently deprive Plaintiff of the right to those funds.

59. Defendant appropriated Plaintiff's $200,000 to its own use, which it was not entitled to do.

60. On September 30, 2014, Plaintiff made a demand on Defendant for payment of the $200,000, pursuant to Section 772.11, Florida Statutes. *See* Exhibit E.

61. As of the date of this Complaint, Defendant has failed to comply with Plaintiff's demand for payment of the $200,000.

62. As a direct and proximate result of Defendant's taking Plaintiff's $200,000, Plaintiff has suffered damages.

WHEREFORE, Plaintiff demands the entry of a judgment against Defendant for treble damages, costs, attorneys' fees (*see* § 772.11, Fla. Stat.), and for such other relief as this Court deems appropriate and just.

## COUNT VI
## CONVERSION

63. Plaintiff repeats, re-alleges and incorporates by reference the allegations set forth in paragraphs 1 through 25 of this Complaint as if sully set forth herein.

64. Plaintiff transferred $200,000 to Defendant for the purchase of the Automobile.

65. Defendant took Plaintiff's $200,000 and failed to deliver the Automobile to Plaintiff.

66. Defendant wrongfully deprived Plaintiff of the $200,000 purchase price that Plaintiff paid for the Automobile.

67. Defendant has the current possession of the $200,000 purchase price that Plaintiff paid for the Automobile.

68. On September 30, 2014, Plaintiff made a demand on Defendant for payment of the $200,000. *See* Exhibit E.

69. As of the date of this Complaint, Defendant has failed to comply with Plaintiff's demand for payment of the $200,000.

70. As a direct and proximate result of Defendant's taking Plaintiff's $200,000, Plaintiff has suffered damages.

WHEREFORE, Plaintiff demands the entry of a judgment against Defendant for treble damages, costs, attorneys' fees (*see* § 772.11, Fla. Stat.), and for such other relief as this Court deems appropriate and just.

## COUNT VII
## VIOLATIONS OF FDUPTA

71. Plaintiff repeats, re-alleges and incorporates by reference the allegations set forth in paragraphs 1 through 25 of this Complaint as if sully set forth herein.

72. This is a statutory action against Defendant for violations of Section 501.204, Florida Statutes, based on deceptive and unfair acts or practices in the conduct of any trade or commerce unlawful and subject to a civil damages remedy.

73. Defendant's conduct in attempting to deliver to Plaintiff the Non-Conforming Automobile, which was not the Automobile Plaintiff had agreed to purchase and was not the Automobile that was depicted on Defendant's website or that Defendant had represented to Plaintiff as being of "concours quality," while still retaining Plaintiff's payment of $200,000 which is far above the value of the Non-Conforming Automobile that Defendant attempted to deliver to Plaintiff, is both deceptive and unfair.

74. Changing the ID number of the Automobile on the Second Purchase Order and attempting to deliver Non-Conforming Automobile with a different ID number was a deceptive practice that mislead Plaintiff.

75. As a direct and proximate result of Defendant's unfair and deceptive acts and practices, Plaintiff has been damaged.

76. The above-described acts and omissions by Defendant constitute unfair and/or deceptive acts or practices in violation of Section 501.204, Florida Statutes, thereby entitling Plaintiff to recover his costs, including attorneys' fees pursuant to Section 501.2105, Florida Statutes.

WHEREFORE, Plaintiff demands the entry of a judgment against Defendant for compensatory damages and/or restitution, interests, costs, and attorneys' fees (*see* § 501.2105, Fla. Stat.), and for such other relief as this Court deems appropriate and just.

DATED this 6th day of October, 2014.

Respectfully submitted,

DAMIAN & VALORI LLP
*Counsel for Plaintiff*
1000 Brickell Avenue, Suite 1020
Miami, Florida  33131
Telephone:  (305) 371-3960
Facsimile:  (305) 371-3965

/s/Melanie E. Damian
Melanie E. Damian, P.A.
  Florida Bar No. 99392
  E-mail:  mdamian@dvllp.com
Kenneth Dante Murena, P.A.
  Florida Bar No. 147486
  Email:  kmurena@dvllp.com
Amanda L. Fernandez, Esq.
  Florida Bar No. 106931
  E-mail:  afernandez@dvllp.com
  Secondary E-mail:  jserna@dvllp.com